UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE STATE OF TEXAS; GREG ABBOTT, in his official capacity as Governor of Texas; TEXAS DEPARTMENT OF PUBLIC SAFETY; STEVEN C. MCCRAW, in his official capacity as Director of Texas Department of Public Safety,<br><br>    *Defendants*. | Case No. 1:24-cv-00008-RP |

**DECLARATION OF TED KIM**

I, Ted Kim, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

I.      **Personal Background**

1.      I am the Associate Director of the Refugee, Asylum and International Operations (RAIO) Directorate within U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS). I have held this position since April 2022. Previously, I was the acting Associate Director of the RAIO Directorate from September 2021 to April 2022, and was the Deputy Associate Director of the RAIO Directorate from September 2018 to September 2021. Prior to my work at the RAIO Directorate, I was Deputy Chief of the RAIO Directorate's Asylum Division. As Deputy Chief, I oversaw local asylum offices nationwide as well as the Asylum Division's headquarters component. During my 13 years with the Asylum Division, I have served in multiple roles, including operations branch chief and asylum officer. I have held a variety of other leadership roles at USCIS, both in the field and at headquarters. I began my federal service in 1999, and have over 24 years of experience.

2.      The Asylum Division is a component of USCIS that, in particular part, grants, denies, refers, or dismisses applications for asylum made under 8 U.S.C. § 1158 (including applications by unaccompanied alien children (UACs) for which the Asylum Division has original jurisdiction under 8 U.S.C. § 1158(b)(3)(C)), and conducts screening determinations regarding whether particular individuals have a credible fear of persecution or torture under 8 U.S.C. § 1225(b)(1)(B) and the regulations at 8 C.F.R. § 208.30.

3.      Due to my experience and the nature of my official duties, I am familiar with Texas's recently enacted law, SB 4. This declaration is based upon my personal knowledge and information provided to me in the course of my official duties.

II.     **The United States' Nonrefoulement Obligations**

4.      In 1968, the United States became a party to the 1967 Refugee Protocol ("Refugee Protocol"), which incorporates Articles 2 through 34 of the 1951 Refugee Convention

relating to the Status of Refugees ("Refugee Convention"). Article 33.1 of the Refugee Convention, referred to as the nonrefoulement provision, imposes a mandatory obligation on contracting countries not to return an individual to a country where their "life or freedom would be threatened" on account of one of the enumerated reasons: "race, religion, nationality, membership in a particular social group, or political opinion." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 429 (1987).

5.  The nonrefoulement obligations are grounded in statute and regulations implementing the protections of the Refugee Convention (through the Refugee Protocol) and Article 3 of the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("Convention Against Torture"). *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 208.16-208.18. DHS and DOJ promulgated various regulatory provisions implementing United States obligations under Article 3 of the Convention Against Torture in immigration matters. *See, e.g.*, 8 C.F.R. §§ 208.16(c)–208.18, 1208.16(c)–1208.18; Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478 (Feb. 19, 1999), as corrected by 64 Fed. Reg. 13881 (Mar. 23, 1999). And USCIS helps implement the United States' nonrefoulement obligations. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 208.16-208.18.

### III. The Asylum Process

6.  USCIS has initial jurisdiction over the asylum applications of noncitizens who are physically present in the United States and are not in removal proceedings. *See* 8 C.F.R. § 208.2(a). Such asylum applications filed with USCIS are referred to as "affirmative" asylum applications. Asylum applications filed by noncitizens in removal proceedings before the Department of Justice's Executive Office for Immigration Review ("EOIR") are referred to as "defensive" asylum applications. *See* 8 C.F.R. §§ 1208.2(b), 1208.4(b)(3)(i); § 1208.16(a).

7.  Any noncitizen in the United States (other than noncitizens present in the Commonwealth of the Northern Mariana Islands) may be granted asylum if they meet the definition of a refugee as described in 8 U.S.C. § 1101(a)(42) and warrant a favorable exercise of discretion, as long as they are not otherwise barred by statute or regulation from being granted

asylum. *See* 8 U.S.C. § 1158(b). Noncitizens must apply for asylum within one year of their last arrival in the United States, unless they can establish the existence of changed circumstances which materially affect their eligibility for asylum or extraordinary circumstances relating to the delay in filing an application. *See* 8 U.S.C. § 1158(a)(2)(B) & (D).

8. If, after an in-person interview, an asylum officer decides that a noncitizen has established eligibility for asylum and that he or she merits a favorable exercise of discretion, the officer may grant the affirmative asylum application. 8 C.F.R. § 208.14(b). If the officer does not grant asylum and the noncitizen is inadmissible or deportable, the officer "shall refer the application to an immigration judge . . . for adjudication in removal proceedings." *Id.* § 208.14(c)(1).[1] Since a referral by USCIS is not a final agency determination, the asylum application remains pending until a final decision by an immigration judge.

9. Asylum applicants who intend to travel outside the United States and return to the United States must first apply for and receive advance parole. 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5(f); *see also* Travel Documents, USCIS, https://www.uscis.gov/green card/green card processes and procedures/travel documents (last updated Dec. 22, 2022).

10. An applicant who leaves the United States without first obtaining advance parole under 8 C.F.R. § 212.5(f) shall be presumed to have abandoned his or her asylum application. 8 C.F.R. § 208.8(a).

### III. The Credible Fear Process

11. Noncitizens who enter or attempt to enter the United States without valid entry documents, or who enter without inspection and are apprehended within two weeks of entry and within 100 miles of the border, may be subject to expedited removal. *See* 8 U.S.C. § 235(b); 8 C.F.R. § 235.3.

---

[1] However, if, at the time the application is decided, the noncitizen is "maintaining valid immigrant, nonimmigrant, or Temporary Protected Status" or "has been paroled into the United States and the parole has not expired or been terminated," "the asylum officer shall deny the application for asylum" without taking further action to seek the removal of the unsuccessful applicant. *Id.* § 208.14(c)(2).

12. The statutory provision at 8 U.S.C. § 1225(b)(1)(A)(i) provides that noncitizens subject to expedited removal shall be "removed from the United States without further hearing or review," unless they indicate "either an intention to apply for asylum . . . or a fear of persecution." Such noncitizens shall be referred for a credible fear screening by a USCIS asylum officer. *See also* 8 C.F.R. §§ 235.3(b)(4), 208.30. This provision implements the United States' nonrefoulement obligations.

13. DHS has authority to conduct credible fear interviews, make credible fear determinations in the context of expedited removal, and to establish procedures for further consideration of asylum applications after an individual is determined to have a credible fear. 8 U.S.C. § 1225(b)(1)(B); *see also* Homeland Security Act § 451(b), 6 U.S.C. § 271(b) (providing for the transfer of adjudication of asylum and refugee applications from the Commissioner of Immigration and Naturalization to the Director of the Bureau of Citizenship and Immigration Services, now USCIS). Some of those authorities have been delegated within DHS to the Director of USCIS and USCIS asylum officers to conduct credible fear interviews and make credible fear determinations, as well as determine whether a noncitizen's asylum application should be granted. *See* DHS, Delegation to the Bureau of Citizenship and Immigration Services, No. 0150.1 (Jun. 5, 2003); 8 C.F.R. §§ 208.2(a), 208.9, 208.30.

14. A credible fear screening includes an interview conducted in person or telephonically by a specially trained USCIS asylum officer to determine whether the noncitizen can demonstrate credible fear of persecution or torture. *See generally* 8 C.F.R. § 208.30. Credible fear of persecution is defined at 8 U.S.C. § 1225(b)(1)(B)(v) as: "that there is a significant possibility, taking into account the credibility of the statements made by the [noncitizen] in support of the [noncitizen's] claim and such other facts as are known to the officer, that the [noncitizen] could establish eligibility for asylum under [8 U.S.C. § 1158]." A noncitizen establishes a credible fear of torture if "the [noncitizen] shows that there is a significant possibility that the [noncitizen] is eligible for withholding of removal or deferral of removal under the Convention Against Torture, pursuant to § 208.16 or § 208.17." 8 C.F.R. § 208.30(e)(3).

15.     If a noncitizen is found to have a credible fear of persecution or torture, USCIS has "complete discretion" to either issue a Notice to Appear (Form I-862) for "full consideration of the asylum and withholding of removal claim in proceedings under section 240 of the Act, or to retain jurisdiction over the application for asylum." 8 C.F.R. § 208.30(f). A noncitizen who is placed into section 240 removal proceedings before an immigration judge following a positive credible fear determination will have the opportunity to apply for asylum, or seek statutory withholding of removal and protection under the Convention Against Torture. If USCIS retains jurisdiction over the application for asylum, an asylum officer will determine if the noncitizen has established eligibility for asylum. *See* 8 C.F.R. § 208.9(b). If the noncitizen does not establish eligibility for asylum, the asylum officer will make a recommendation regarding the noncitizen's eligibility for statutory withholding of removal or protection under the Convention Against Torture, and will issue a Notice to Appear for the noncitizen to pursue these claims in immigration court. *Id.*; 8 C.F.R. § 208.16(a) and (c).

**IV.    SB 4's Effect on USCIS's Processes and Nonrefoulement**

16.     USCIS has an obligation to implement procedures relating to asylum applications and credible fear determinations. SB 4 does not appear to have any of the safeguards in place for asylum applicants, or for noncitizens seeking withholding of removal or protection under the Convention Against Torture that are available under U.S. law.

17.     Potential and actual asylum applicants, as well as noncitizens applying for statutory withholding from removal and protection under the Convention Against Torture, would be impacted by SB 4. Consistent with nonrefoulement obligations, DHS does not remove a noncitizen with a pending application for asylum, withholding of removal, or protection under the Convention Against Torture. *See* 8 C.F.R. § 208.5(a). However, SB 4 provides for the confinement and expulsion to a foreign country of noncitizens with pending applications for asylum, withholding of removal, and in direct conflict with the protections provided under federal law and inconsistent with the United States' obligations pertaining to nonrefoulement.

18. Furthermore, noncitizens detained under SB 4, or removed from the United States, would be unable to participate fully in federal immigration proceedings. Such noncitizens would be unable to attend scheduled interviews related to their applications for asylum and withholding of removal, and would be unable to comply with required identity and security check procedures. This would frustrate USCIS' ability to schedule interviews and adjudicate these applications. A noncitizen's failure to appear at an asylum interview or comply with identity and security check procedures may also result in the dismissal of the asylum application or waiver of the right to interview. 8 C.F.R. § 208.10.

Executed on January 12, 2024.

_____
Ted Kim
Associate Director
Refugee, Asylum and International Operations Directorate
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security