IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF TEXAS, et al.,<br><br>    Defendants.<br>_____<br><br>LAS AMERICAS IMMIGRANT ADVOCACY<br>CENTER, AMERICAN GATEWAYS; and THE<br>COUNTY OF EL PASO, TEXAS,<br><br>    Plaintiffs,<br><br>v.<br><br>MCCRAW, STEVEN C. MCCRAW, in his<br>official capacity as Director of the State of Texas<br>Department of Public Safety, and BILL D.<br>HICKS, in his official capacity as District<br>Attorney for the 34th District,<br><br>    Defendants. | CASE NOS. 1:24-cv-00008-DAE<br>(LEAD CASE)<br><br>CONSOLIDATED WITH 1:23-cv-01537 |

**AMICUS CURIAE BRIEF OF ADVOCATES FOR VICTIMS OF ILLEGAL ALIEN
CRIME IN SUPPORT OF DEFENDANTS AND IN OPPOSITION TO PLAINTIFFS'
MOTIONS FOR INJUNCTIVE RELIEF**

Paul W. Davis
Paul M. Davis & Associates, P.C.
5720 Frisco Square Blvd., #2066
Frisco, TX 75034
(469) 850-2930
paul@fireduptxlawyer.com

Lorraine G. Woodwark
Attorneys United for a Secure America
25 Massachusetts Avenue NW, Ste 335
Washington, D.C. 20001
(202) 591-0962
(202) 464-3590
LWoodwark@IRLI.org

Andrew L. Schlafly
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
(908) 719-8608
(908) 934-9207 (fax)
aschlafly@aol.com

*Counsel for Amicus Curiae Advocates for Victims of Illegal Alien Crime*

# TABLE OF CONTENTS

Table of Contents ............................................................................................................ ii

Table of Authorities ....................................................................................................... iii

Identity, Interest and Authority to File ........................................................................1

Summary of Argument ...................................................................................................1

Argument ..........................................................................................................................5

I.    Plaintiffs' Pre-Enforcement Challenge is Premature, and SB 4 Does Not
Frustrate any of the "Purposes and Objectives" of Federal Law Nor Violate
the Supremacy Clause ...........................................................................................5

    A. Plaintiffs' Pre-Enforcement Challenge is Premature, there Is No
    Irreparable Harm to Plaintiffs, and the Public Interest Factor Weighs
    Entirely Against Them ........................................................................................6

    B. SB 4 Should Not Be Enjoined Because It Has Not Frustrated any of the
    "Purposes and Objectives" of Federal Law ...................................................8

    C. The Supremacy Clause Does Not Preempt State Law Not in Conflict
    with Congressional Intent .................................................................................10

II.   An Unenforced Federal Law Does Not Preempt a Similar State Law, and It
Would Violate the Guarantee of a Republican Form of Government to
Thereby Thwart Representative Democracy ....................................................11

    A. An Unenforced Federal Law Does Not Preempt Similar State Law ............11

    B. Plaintiffs' Approach Would Lead to Violations of the Constitutional
    Guarantee of a Republican Form of Government ...........................................13

III.  Preemption Doctrine Does Not Override Sovereign Self-Defense Against
an Invasion .............................................................................................................15

Conclusion .......................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Amoco Production v. Village of Gambell*, 480 U.S. 531 (1987) .................................................. 8

*Arizona v. United States*, 567 U.S. 387 (2012) ........................................................................... 10

*Campbell v. Race*, 61 Mass. 408 (1851) ...................................................................................... 18

*Democratic Party of Wis. v. Vos*, 966 F.3d 581 (7th Cir. 2020) ................................................. 15

*City Fire Insurance Co.* v. *Corlies,* 21 Wend. 367 (N.Y. 1839) ................................................. 16

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................................... 8

*City of Palm Springs v. Luna Crest Inc.*, 245 Cal. App. 4th 879, 200 Cal. Rptr. 3d 128 (2016) ... 9

*Coleman v. Thompson*, 501 U.S. 722 (1991) ............................................................................... 15

*Democratic Party of Wis. v. Vos*, 966 F.3d 581 (7th Cir. 2020) ................................................. 14

*Drinkwater v. The London Assurance Co.,* 2 Wilson 363 (1767) ................................................ 16

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ........................................... 10

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963) ................................ 10, 12

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) .................................................... 10

*Harris* v. *York Insurance Co.,* 50 Penn. 341 (1865) ................................................................... 16

*Houston v. Moore*, 18 U.S. 1 (1820) ............................................................................................ 13

*Ins. Co. v. Boon*, 95 U.S. 117 (1877) .......................................................................................... 16

*Langdale* v. *Mason,* 2 Park on Ins. Marsh. Ins. 965 (1780) ....................................................... 17

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) .................................................................................. 15

*Nat'l Shooting Sports Found. v. AG of N.J.*, 80 F.4th 215 (3d Cir. 2023) .................................. 8

*New York v. United States*, 505 U.S. 144 (1992) ......................................................................... 16

*Olivier v. City of Brandon*, No. 22-60566, 2023 U.S. App. LEXIS 22506
   (5th Cir. Aug. 25, 2023) .......................................................................................................... 6

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008) .......................................... 6

*United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013) ................................................... 9

*Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894 (2019) .................................................................. 9

*Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008) ........................................................... 7

**Statutes**

18 U.S.C. § 700 .............................................................................................................................. 9

SB 4 ........................................................................................................................................ *passim*

**Other Authorities**

U.S. Const., Art. VI, cl. 2 ............................................................................................................. 10

U.S. Const., Art. I, §10, Cl. 3 ............................................................................................. 2, 4, 13, 16

U.S. Const., Art. IV, §4 ....................................................................................................... 13, 16

U.S. Const., Tenth Amend. ....................................................................................................... 2, 16

Matthew Choi and Robert Downen, "'Hold the line': Republicans rally to Abbott's defense in
   border standoff with Biden," *Texas Tribune* (Jan. 25, 2024) ................................................. 4

Heritage Foundation, "Major Spike in Convicted-Criminal-Alien Encounters by U.S. Border
   Patrol" ..................................................................................................................................... 18

Letter by Ken Paxton to Jonathan E. Meyer, General Counsel, U.S. Department of Homeland
   Security (January 17, 2024) ...................................................................................................... 3

Letter by President Abraham Lincoln to General George McClellan (1862) ............................... 3

Statement by Texas Gov. Greg Abbott (January 26, 2024)............................................................ 4
U.S. Customs and Border Protection, "Criminal Noncitizen Statistics" (Jan. 26, 2024) ............. 18

## IDENTITY, INTEREST AND AUTHORITY TO FILE[1]

*Amicus curiae* Advocates for Victims of Illegal Alien Crime ("AVIAC") is a 501(c)(3) non-profit organization that was founded in 2017 in response to crimes committed by illegal aliens. AVIAC is led by individuals who have lost family members due to these crimes.[2] AVIAC's mission includes being a source of support for such victims across the country and a resource for policies that will enforce our Nation's immigration laws and defend local efforts to combat crime by illegal aliens. Specifically, AVIAC objects to interference by the federal executive branch with the sovereign right of Texas to defend its residents and property from the immense, worsening illegal invasion by foreigners.

AVIAC has a direct and valid interest in the case at bar with respect to actions by the federal executive branch to interfere with a Texas law enacted by duly elected representatives to protect the people of Texas. AVIAC has a valid interest in the sovereign right of Texas to defend its residents against the current, overwhelming crisis of an illegal invasion and its associated unlawful conduct by foreigners here.

## SUMMARY OF ARGUMENT

Plaintiffs United States ("Biden administration") and the Las Americas group in the consolidated case make a sweeping demand here to enjoin, pre-enforcement, a major piece of legislation enacted during a special session of the Texas legislature. Plaintiffs' arguments are premature and untethered to the catastrophe engulfing Texas, and indeed our Nation, as caused by

---

[1] The undersigned counsel certifies that counsel for the *Amicus* authored this brief in whole; no counsel for a party authored this brief in any respect; and no person or entity – other than *Amicus*, its members, and its counsel – contributed monetarily to this brief's preparation or submission. *Amicus* files an accompanying motion for leave to file this brief, and all the parties in the lead case of these consolidated cases, No. 1:24-cv-00008, have stated that they do not oppose this motion.
[2] https://www.aviac.us/ (viewed Jan. 24, 2024).

President Biden's refusal to enforce the same federal laws that Plaintiffs insist preempt this new Texas law, Senate Bill 4 ("SB 4")[3].

The foremost duty of the Executive Branch is to faithfully execute the laws of the United States, which includes laws enacted by Congress against unlawful entry into each State. Several times for more than a year, Governor Abbott patiently requested assistance from the Biden administration to secure the southern border against invasion. Each of those official requests was ignored. As a result of the Biden Administration's refusal to close the southern border, Governor Abbott declared an invasion under the authority of both the U.S. Constitution's Tenth Amendment (State's rights) and its Article I, Section 10, Clause 3, subpart 2, which states, in part: "… unless actually invaded, or in such imminent Danger as will not admit of delay." This invasion continues an "imminent [d]anger" to Texans; countless of these aliens are members of criminal gangs, drug cartels, and even known terrorists.

Texas has the constitutional right to act in self-defense to prevent an invasion by foreigners, and nothing in the U.S. Constitution or federal law limits Texas's fundamental police power to defend State sovereignty. Plaintiffs incorrectly allege that SB 4 violates the Supremacy Clause; this Texas law does not interfere with the authority of Congress over immigration law. Congress remains free to implement current immigration laws while a State has the constitutional right protect its sovereignty against invasion.

Moreover, Plaintiffs' pre-enforcement motions are premature: they are filled with speculation about a discordant effect by SB 4 on "foreign policy" and "foreign relations," repeated by the Biden administration a total of 25 times, which is unsupported by the record and implausible

---

[3] https://legiscan.com/TX/text/SB4/id/2851390/Texas-2023-SB4-Enrolled.html

as foreign authorities facilitate this illegal invasion. The Biden administration's assertions require, at a minimum, development of a factual record after SB 4 goes into effect. Deportation, for example, may not even occur under SB 4 until there is a new federal administration, which might then welcome enforcement actions by Texas.

Plaintiffs' motions fail to address this elephant in the room: the Biden administration is not enforcing the same federal laws on which Plaintiffs' motions rely. As Texas Attorney General Ken Paxton recently described this travesty:

> According to your [the Biden administration's] letter, "[t]he U.S. Constitution tasks the federal government with ... securing the Nation's borders." ***When were you planning to start?***

Letter by Ken Paxton to Jonathan E. Meyer, General Counsel, U.S. Department of Homeland Security, p. 3 (January 17, 2024) (emphasis added). Historians might find that reminiscent of President Abraham Lincoln's famous letter to his not-yet-fired General George McClellan: "My dear McClellan: If you don't want to use the Army I should like to borrow it for a while."[4]

In addressing Plaintiffs' motions, this Court should take notice at the outset of the rapidly worsening crisis that Plaintiffs ignore: illegal migration over the southern border into Texas has soared to a record high, more than 300,000 in the month of December 2023 alone, with no end in sight. This exceeds 10% of the population of Texas annually, overwhelming its law enforcement and institutions. As Texas Gov. Abbott stated recently about his Operation Lone Star program:

> Operation Lone Star continues to fill the dangerous gaps created by the Biden Administration's refusal to secure the border. … Since the launch of Operation Lone Star [in March 2021], the multi-agency effort has led to over 496,700 illegal immigrant apprehensions and more than 38,700 criminal arrests, with more than 35,100 felony charges. In the fight against the fentanyl crisis, Texas law enforcement has seized over 454

---

[4] Paul Krugman, "The Conscience of a Liberal: Lincoln, McClellan, And Stimulus," *New York Times* (July 6, 2010). https://archive.nytimes.com/krugman.blogs.nytimes.com/2010/07/06/lincoln-mcclellan-and-stimulus/ (viewed Jan. 28, 2014).

million lethal doses of fentanyl during this border mission.[5]

By seeking a pre-enforcement injunction against SB 4, Plaintiffs attempt to impede Texas from doing more of this good work even though the efforts by Texas are consistent with federal law.

Our governmental system is one of dual sovereigns, as the U.S. Supreme Court has repeatedly held, and respect by the co-sovereigns for each other must remain a two-way street. The sovereign authority of Texas inherently includes its right of self-defense, and Plaintiffs should recognize that Texas Governor Greg Abbott has properly invoked the invasion clause of the U.S. Constitution, as he recently reiterated: "I have already declared an invasion under Article I, § 10, Clause 3 to invoke Texas's constitutional authority to defend and protect itself." Public Statement by Texas Governor Greg Abbott, dated on January 24, 2024.[6] Within 24 hours, every Republican governor in our Nation, except in Vermont, then publicly and strongly supported Abbott's position. Matthew Choi and Robert Downen, "'Hold the line': Republicans rally to Abbott's defense in border standoff with Biden," *Texas Tribune* (Jan. 25, 2024).[7]

Congressional leader Rep. Chip Roy (R-TX), who represents the 21st congressional district that is within the district of this Court, recently urged Texas officials to be bold in defending against this invasion, by comparing it to a criminal intrusion into one's own home. "It's like, if someone's breaking into your house …." Rep. Chip Roy Press Office@RepChipRoy, X, (Jan. 25, 2024).[8] Millions of illegal aliens are flagrantly breaking federal law by invading Texas, and no one credibly

---

[5] Statement by Texas Gov. Greg Abbott dated January 26, 2024.
https://gov.texas.gov/news/post/operation-lone-star-holds-the-line-to-defend-southern-border (viewed Jan. 27, 2024).
[6] https://gov.texas.gov/uploads/files/press/Border_Statement_1.24.2024.pdf (viewed Jan. 25, 2024).
[7] https://www.texastribune.org/2024/01/25/greg-abbott-border-republicans-joe-biden/ (viewed Feb. 3, 2024).
[8] https://twitter.com/RepChipRoy/status/1750558706800980126 (viewed Jan. 25, 2024).

denies that. After years of aggressive, persistent, and defiant refusal by the Biden administration to satisfy its obligation to enforce immigration federal law, and amid this rapidly worsening crisis of invasion, SB 4 constitutes a proper exercise of Texas sovereign power to protect Texans against this dangerous flood of illegality. This act of sovereign self-defense does not interfere with the authority of Congress over immigration, as Congress remains free, consistent with SB 4, to extend existing immigration laws or enact new ones to establish or deny citizenship to foreigners however Congress may see fit. It is not tenable for merely the federal executive branch, acting unilaterally and contrary to congressional intent as reflected in existing federal law, to interfere with self-defense by the sovereign State of Texas against this massive illegal invasion.

Legal doctrine is not blind to the disingenuous conduct by the Biden administration, whereby it refuses to enforce federal law against the overwhelming invasion of migrants while simultaneously demanding an injunction against Texas as it acts in self-defense. This is akin to a waterway trapping a family in their home surrounded by rising floodwaters, and an unhelpful federal agency insisted on blocking any local assistance to them based on a broad assertion of federal jurisdiction. Nowhere does the Biden administration address that its own failure to faithfully execute federal law, as obligated by the U.S. Constitution, has precipitated this crisis and forced Texas to enact SB 4. It is fanciful for Plaintiffs to ignore this central issue and demand that Texas not be allowed to address the crisis the Biden administration causes.

## ARGUMENT

**I.     Plaintiffs' Pre-Enforcement Challenge is Premature, and SB 4 Does Not  Frustrate any of the "Purposes and Objectives" of Federal Law Nor Violate the Supremacy Clause.**

Injunctions against this sovereign State and its representative democracy should not become purely academic exercises, devoid of the factual context. The Biden administration's brief

5

fails to address the central facts, omits controlling precedents, and is silent about the untenable consequences that would follow if its reasoning were adopted. The burden is heavy on a plaintiff seeking a pre-enforcement injunction against a new State law, and Plaintiffs fall far short here of satisfying their burden. The Biden Administration's non-enforcement policy is contrary to congressional intent, and the Executive Branch does not unilaterally establish federal law. Mere administrative policy is not law, but rather how a particular administration intends to enforce federal immigration laws, and administrative policy does not preempt this state law.

**A. Plaintiffs' Pre-Enforcement Challenge is Premature, There Is No Irreparable Harm to Plaintiffs, and the Public Interest Factor Weighs Entirely Against Them.**

Pre-enforcement challenges to state laws, particularly outside of the First Amendment context as this lawsuit is, are strongly disfavored.  The Fifth Circuit has explained:

> [Plaintiff's] request for injunctive relief is a pre-enforcement challenge. Such challenges are not ripe if the issues are "abstract or hypothetical."

*Olivier v. City of Brandon*, No. 22-60566, 2023 U.S. App. LEXIS 22506, at *6 (5th Cir. Aug. 25, 2023) (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008), citation omitted). Where, as here, "further factual development is required," then a pre-enforcement challenge to a law is premature and should be denied. *Roark & Hardee*, 522 F.3d at 545.

Plaintiffs' motions here are indeed abstract and hypothetical, filled with unfounded speculation about an impact on foreign policy and potential conflict between Texas authorities and the current or a future federal Executive Branch. No such conflict has ever occurred under SB 4 – it has not even gone into effect yet – and it is more plausible that its implementation to combat illegality will be entirely consistent with congressional intent on this same issue. It is difficult to imagine a federal (or foreign) official sincerely and properly objecting to efforts by Texas officials to stop illegality in Texas. But if and when any genuine conflict were to arise, then a challenge to

SB 4 should be based on that factual record, not on unrestrained speculation as presented in Plaintiffs' motions.

The prospect of the Biden administration being replaced in the upcoming election by a rival administration, which could be fully supportive of the efforts by Texas to combat illegal immigration, renders the pending motion even more "abstract and hypothetical" and thus premature to decide before SB 4 is ever enforced. It is plausible, and even likely, that the Texas executive branch would decline to actually deport any illegal aliens until after the upcoming presidential election, in order to await full support by a new administration. Less plausible, but still possible, is that the current administration will on its own reverse its open-border policy and, alas, the cries of an intolerable conflict presented by the Biden administration's motion would evaporate. Regardless, federal courts are not places for speculation about how a law may one future day be enforced, particularly when no harm is caused by waiting until the facts concerning its enforcement emerge. The deportation of an illegal alien by Texas, if and when that ever happens, would present the proper case in which to adjudicate the claims asserted here prematurely.

The Supreme Court requires denying a preliminary injunction where, as here, it was:

> simply to prevent the possibility of some remote future injury. Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with the characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

*Winter v. NRDC, Inc.*, 555 U.S. 7, 7, 129 S. Ct. 365, 366 (2008). As further and recently explained by another Circuit in a ruling entirely consistent with the controlling Fifth Circuit teaching:

> Federal courts are not forecasters. The Constitution limits our jurisdiction to disputes that have ripened fully. We may not prejudge hypothetical cases or offer legal advice. Instead, parties must first be injured before coming to us for redress. Only then do we react. When constitutional rights are at stake, we accelerate that timeline—but only slightly. We may hear a case before a person's rights are violated only if the threat is imminent.

7

*Nat'l Shooting Sports Found. v. AG of N.J.*, 80 F.4th 215, 217 (3d Cir. 2023). Plaintiffs' demand here to enjoin SB 4 is widely premature.

The *Las Americas* Plaintiffs allege "irreparable harm" based on future speculation about clients (Las Americas Mot. at 24), but that falls short of the required evidence of a "real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983). Furthermore, the public interest prong of the test for injunctive relief weighs entirely against Plaintiffs, as Texans experience record-breaking serious crimes due to this Invasion. *See, e.g.*, *Amoco Production v. Village of Gambell*, 480 U.S. 531, 544 (1987) (holding that the public interest promoted by the Alaska National Interest Lands Conservation Act was "to protect Alaskan subsistence resources from unnecessary destruction," rather than preventing the actions that Plaintiff sought to enjoin).

## B. SB 4 Should Not Be Enjoined Because It Has Not Frustrated any of the "Purposes and Objectives" of Federal Law.

The U.S. Supreme Court recently rejected a claim for preemption because "we [do not] see anything to suggest that the enforcement of Virginia's law would frustrate the [federal law's] purposes and objectives." *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900 (2019). Likewise here. Nothing in Plaintiffs' motions identify any enforcement of SB 4 that would genuinely frustrate any of the "purposes and objectives" of relevant federal laws. That is the showing needed by a plaintiff to justify an extraordinary pre-enforcement injunction against a state law, and Plaintiffs' utterly fail to satisfy this threshold requirement, and do not even cite this precedent.

Instead, Plaintiffs cling to a field preemption argument that is completely divorced from any factual argument about enforcement. As explained further in Point II below, field preemption cannot rest on a federal law that is persistently unenforced. With so many innocent victims of

crime at risk from this rampant illegality, adjudication should not be a merely platonic exercise that puts on blinders about a crisis raging out of control, as is occurring now with the open border.

An analogous preemption issue arises in the overlapping cannabis regulation. As plainly held by a California appellate court against a preemption challenge similar to that by the Biden administration here:

> [W]e find that the City's regulatory program for medical marijuana dispensaries neither conflicts with federal law, nor stands as an obstacle to its purposes and objectives. As such, the trial court properly denied Luna's request for an injunction against its enforcement.

*City of Palm Springs v. Luna Crest Inc.*, 245 Cal. App. 4th 879, 886, 200 Cal. Rptr. 3d 128, 133 (2016).

Plaintiffs' motions rely on misplaced precedents that have no bearing on the crisis at hand, and which did not address the dispositive issues here. For example, Plaintiffs repeatedly cite a Fourth Circuit decision that invalidated a South Carolina statute which created a felony based on an illegal presence in that State. *See United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013) (cited by US Mot. at 17, 20, 33, 34; and by the *Las Americas* Mot. at 10, 13). Nowhere did that Fourth Circuit decision address the abject failure of the federal executive branch to enforce the relevant laws. Instead, that decision considered federal laws in an abstract manner completely independent from the all-important reality of whether the federal laws were being enforced. An unenforced federal law, with overwhelming evidence that the administration has not and will not enforce it, is in practical terms non-existent. There are many federal laws on the books which are not enforced or known to be unenforceable, such as the flag-burning statute at 18 U.S.C. § 700, and it would be inappropriate to apply preemption doctrine to these nullities, as explained further in Point II.A below.

**C.  The Supremacy Clause Does Not Preempt State Law Not in Conflict with Congressional Intent.**

The Supremacy Clause of the U.S. Constitution provides that "the Laws of the United States ... shall be the supreme Law of the Land ... Laws of any State to the contrary notwithstanding." U.S. Const., Art. VI, cl. 2. A violation of the Supremacy Clause is when a state law actually conflicts with federal law; then the state law is preempted. *See Arizona v. United States*, 567 U.S. 387, 399 (2012) ("The Supremacy Clause provides a clear rule . . . Congress has the power to preempt state law."). Preemption under the Supremacy Clause "is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (quotation marks and citations omitted). This is regardless of whether "[p]re-emption ... is explicitly stated in the statute's language or implicitly contained in its structure and purpose," *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982). But there is no implied conflict here.

The first type of implied conflict is "conflict-impossibility preemption," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), which occurs when "compliance with both federal and state regulations is a physical impossibility" *Arizona*, 567 U.S. at 399. This type of preemption is not applicable because SB 4 does not create a "conflict-impossibility" with Congress' immigration laws. The second type of conflict preemption is "conflict-obstacle preemption" (or simply "obstacle preemption"), *Florida Lime*, 373 U.S. at 142-43, "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399. SB 4 does not create an obstacle to the accomplishment and objectives of Congress, but rather enforces immigration enforcement and removes aliens invading into Texas from Mexico.

The Biden administration's policy of refusing to enforce immigration laws, including protecting the southern border, has resulted in the continued invasion. SB 4 does not re-write but instead advances the congressional intent of federal immigration enforcement, which is to prevent unlawful entries and remove criminal aliens. Texas already has the authority to arrest and detain aliens. SB 4 provides the mechanism for Texas law enforcement to arrest, detain and remove aliens after an order for removal has been filed. Texas has the constitutional right to defend its state's sovereignty in this manner, against invasion.

Congress authorizes States to enforce discretionary immigration enforcement methods that Texas uses to maintain operational control, including arresting aliens who unlawfully entered the U.S. A conflict between a state law and federal discretionary enforcement policies is not a conflict between laws. The current Biden administration's policy is *not to enforce* immigration laws. It is a policy contrary to congressional intent as non-enforcement is not part of discretionary statutory enforcement methods or techniques.

## II.   An Unenforced Federal Law Does Not Preempt a Similar State Law, and It Would Violate the Guarantee of a Republican Form of Government to Thereby Thwart Representative Democracy.

### A.  An Unenforced Federal Law Does Not Preempt Similar State Law.

The Biden administration has been passively aggressive in not enforcing federal immigration laws, and this has deliberate lack of enforcement has persisted for years. SB 4 is a legitimate response to that. Demonstrably unenforced federal laws cannot preempt state laws. When a state law is consistent with an unenforced federal law, there is no rational preemption to invalidate the state law. The Biden administration presents no precedents for applying field preemption based on an unenforced federal statutory scheme, which is the issue here.

If Plaintiffs were correct in arguing for preemption, then any federal administration could

aggressively refuse to enforce a federal law while insisting that all similar state laws be invalidated. This would grant law-making authority to the federal executive branch, which of course it does not properly have. A defiant administration could refuse to enforce federal laws about narcotics, abortion, transgender issues, and other culture-defining matters while simultaneously suing to overturn similar laws in States under preemption theories.

The ruling sought by the Biden administration would impermissibly grant to the federal executive branch the unilateral authority to invert federal law such that the opposite of what was intended by Congress would occur. If Congress, for example, established a minimum age of consent for sex with minors, and a federal executive branch defiantly refused to enforce it then, under the approach taken here by the Biden administration here, a State would be powerless to establish the very same age of consent that Congress enacted into law. This same absurd result would occur in many highly controversial fields, ranging from transgender operations to abortion to narcotics. The Biden administration could aggressively refuse to enforce any law that it dislikes, and then sue to enjoin any State in order to block a similar law that the State enacts in response to the non-enforcement by the federal executive branch.

SB 4 amends Texas Penal Code §51 to include arrest, detain, prosecute, and remove foreign invaders after a filed order. For example, the legislature added §51.02 (Illegal Entry from Foreign Nation), §51.03 (Illegal Reentry by Certain Aliens, and §51.04 (Refusal to Comply with Order to Return to Foreign Nation). The legislative amendments to P.C. 51 include procedures on arrest and removal, including exceptions for where law enforcement cannot arrest aliens. Art. 5B.001, (1) to (4). The SB 4 also provides procedures for removal, including the requirement of an order. Art. 5B.002. These provisions are entirely consistent with federal law.

As the State Commander-in-Chief, a State Governor may invoke Article I when a state is "… actually Invaded". U.S. Const., Art. I, §10, Cl. 3. Judge Story wrote, "Why may not a State call forth its own militia in aid of the United States to execute the laws of the Union, or suppress insurrection or repel invasions? It would certainly seem fit that a State might do so, *where the insurrection or Invasion was within its own territory and directed against its own existence or authority ….*" *Houston v. Moore*, 18 U.S. 1, 54 (1820) (Story, J., dissenting, emphasis added).

**B. Plaintiffs' Approach Would Lead to Violations of the Constitutional Guarantee of a Republican Form of Government.**

Plaintiff Biden administration relies heavily on the Supremacy Clause (US Mot. 14, 30, 36), but the U.S. Constitution also guarantees a republican form of government. U.S. Const., Art. IV, Sec. 4. This means, at a minimum, that the people through their elected representatives may, amid a crisis, protect themselves against an illegal invasion by foreigners. Texans have done that, initially through Congress and now, as compelled by necessity, through the Texas legislature. The Biden administration refuses to enforce the federal statutes, and now seeks to block the similar, newly enacted Texas law. This unilateral interference by the federal executive branch with representative government is, if allowed, in violation of the constitutional guarantee of a republican form of government.

Throughout the Biden administration's motion, it falsely pretends that it acts with the same authority that Congress does, while ignoring that the Biden administration is failing to execute the laws enacted by Congress concerning immigration. Plaintiffs are not Congress, are not acting with the approval of Congress here, and are not acting on behalf of the federal government as a whole. The precedents relied upon by Plaintiffs fail to come to terms with the situation presented here: a conflict between branches of the federal government itself, and a deliberate failure by one branch

13

of government, the federal executive branch, to faithfully execute federal laws. Writing on a relatively clean slate on this issue of an internal federal conflict, this Court should decide the dispute in favor of representative democracy. This action by the Biden administration in burdening Texas is unprecedented, and thus it is hardly reasonable to expect legal precedent from a defendant to rule it. The presumption should be that the decision made by representative democracy in Texas will govern. *Cf. Democratic Party of Wis. v. Vos*, 966 F.3d 581, 589 (7th Cir. 2020) (confirming that Guarantee Clause claims and arguments are justiciable) (Diane Wood, J., joined by Amy Coney Barrett, J.)

Left unaddressed by Plaintiffs' motions is how their approach, if accepted, would result in an untenable loophole for a federal executive branch to remake the law by passive aggressive non-enforcement. By refusing to enforce federal law while aggressively seeking injunctions against state laws similar to the federal ones, a federal administration could thereby rewrite laws to be opposite of what Congress enacted and a prior president signed. That would be lawmaking by a federal executive branch contrary to the structure of the Constitution, and in denial to the people of the constitutional guarantee of a republican form of government.

This overreach by the Biden administration in demanding that a Texas law enacted by representative democracy be immediately invalidated before it even takes effect is breathtakingly brazen. The Biden administration recounts how it even demanded by letter a justification by Texas officials for SB 4. (US Mot. 13) Texas is fully a co-sovereign to the United States, not a vassal and subservient form of government. Texas officials do not answer to the federal government. The U.S. Constitution fully guarantees to Texas a republican form of government, and SB 4 should be protected in light of that guarantee. The Biden administration violates that guarantee by attempting as one branch of the federal government, acting contrary to the intent of Congress, to completely

14

thwart the will of our second largest State as enacted by its legislature.

### III.  Preemption Doctrine Does Not Override Sovereign Self-Defense Against an Invasion.

Preemption doctrine must yield to sovereign self-defense, in order to preserve our system of dual sovereigns. *See, e.g.*, *Murphy v. NCAA*, 138 S. Ct. 1461, 1477 (2018) (The Constitution "divides authority between federal and state governments for the protection of individuals."); *New York v. United States*, 505 U.S. 144, 181 (1992) ("State sovereignty is not just an end in itself: 'Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 759 (1991) (Blackmun, J., dissenting)). The Biden administration cannot properly allow a massive population of foreigners to jeopardize safety in Texas while simultaneously preventing Texas from acting, consistent with federal law, to defend itself. By failing even to address this central issue, the Biden administration's motion here is woefully inadequate and must be denied.

According to the Merriam-Webster Dictionary, invasion is an "act of invading, especially: incursion of an army for conquest or plunder."[9] The Law Dictionary also defines invasion as "[a]n encroachment upon the rights of another; the incursion of an army for conquest or plunder."[10] The State of Texas is being invaded daily by hordes of illegal aliens, most of whom are military-age young men, as can be seen in a CNN photo.[11] The CNN article also headlines that the surge at the southern border is the largest in more than two decades.

The Framers defined "invasion … as a military power, and … domestic rebels, like the Pretenders and their followers, '*any* military or usurped power whatsoever' was added. Manifestly,

---

[9] https://www.merriam-webster.com/dictionary/invasion
[10] https://thelawdictionary.org/invasion/ *See also Etna Ins. Co. v. Boon*, 95 U. S. 129 (1877).
[11] https://www.cnn.com/2023/12/29/us/us-mexico-border-migration/index.html

'military' and 'usurped' were synonymous." *Ins. Co. v. Boon*, 95 U.S. 117, 123 (1877) (emphasis in original). *See also Drinkwater v. Corp of the London Assurance,* 2 Wilson 363 (1767); *Langdale* v. *Mason,* 2 Park on Ins. 965, 791 (1780); *The City Fire Insurance Co.* v. *Corlies,* 21 Wend. Rep. 367 (N.Y. 1839); *Harris* v. *York Insurance Co.,* 50 Penn. 341 (1865). The inclusion of "… unless actually invaded, or in such imminent Danger as will not admit of delay" provides State Governors the authority to defend sovereignty against both domestic and foreign invasion. U.S. Const., Art. I, §10.

The constitutional framework of checks and balances is to guard against tyranny, including protecting against abuses by the national government upon its citizens. Types of abuse include the refusal to enforce immigration laws and delay in protecting state sovereignty during "actual Invasion." The federal government was given constitutional powers to protect States' sovereignty rights and the rights of the American People. "The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion .…" U.S. Const., Art. IV, §4.

Yet the Biden Administration refuses to protect States against invasion. Governor Abbott, as State Commander in Chief, lawfully invoked State's Police Powers and Article I, which is not part of immigration law. U.S. Const., Tenth Amend. (State Police Powers) and Art. I, §10, Clause 3, which states, in part, "No state shall, without the consent of Congress… enter into any agreement or compact with another state, or with a foreign power, or engage in war, *unless actually invaded, or in such imminent danger as will not admit of delay.…*" (emphasis added). The Administration's refusal to enforce federal immigration law and remove illegal aliens is contrary to Congress's intent.

An abbreviated timeline of the many official requests by Governor Abbott to the Biden administration proves the necessity of taking official action. On November 15, 2022, Texas Governor Abbott declared invasion.[12] On January 8, 2023, Governor Abbott hand-delivered letters to both DHS and President Biden regarding the border crisis.[13] Again, on September 21, 2023, Governor Abbott declared an "invasion" at the Texas-Mexico border because of the increasing number of mostly young military-age men illegally entering into Texas and other border states.[14] And on December 29, 2023, The Center Square reported that 47 counties in Texas had also declared an invasion.[15] The continued invasions from Mexico into Texas are apparent to most Americans; not just Texans who live along the border.

Recently, Congressional Representatives visited Texas' border. As Rep. Matt Rosendale publicly declared, "We have major, major problems and I continue to say this is an imminent national security threat," and that the "gotaways" are likely to intentionally harm Americans as "they can wreak havoc across the nation with our national security."[16] Many aliens unlawfully entering Texas claim they are fleeing violence in their homelands. Yet, most of the aliens are men. If they were genuinely fleeing their countries, then primarily women and children would try to enter. The mostly young men entering are, by definition, an invasion, which is causing ongoing harm and death.

---

[12]     https://www.foxnews.com/politics/texas-gov-greg-abbott-invokes-constitutional-invasion-clause-immigration-crisis
[13] https://gov.texas.gov/news/post/governor-abbott-hand-delivers-letter-to-president-biden-at-border-visit
[14] https://spectrumlocalnews.com/tx/south-texas-el-paso/news/2023/09/21/abbott-declares--invasion--at-border
[15] https://www.thecentersquare.com/texas/article_829c56c6-a65f-11ee-ae66-1fc4c7c8d126.html
[16] https://www.zerohedge.com/political/some-house-republicans-willing-force-government-shutdown-after-eagle-pass-border-visit

With this record illegal migration comes unbearable crime, poverty, and narcotics, all of which must remain within the sovereign power of Texas to combat. "Major Spike in Convicted-Criminal-Alien Encounters by U.S. Border Patrol," is a report by the Heritage Foundation that shows the staggering increase in crimes of all types by illegal aliens during the Biden administration, far higher than the criminal activity of that demographic during the prior Trump administration. For example, the encounters for Illegal Drug Possession/Trafficking declined each year of the Trump administration, and then skyrocketed to more than five times the 2020 level for every year of the Biden administration as detailed by this report.[17]

The illegal alien crime data posted by the U.S. government itself fully justifies SB 4 in order to address the epidemic of violence, drugs, and other felonies that illegal aliens are inflicting on Americans. *See* U.S. Customs and Border Protection, "Criminal Noncitizen Statistics" (Jan. 26, 2024) (showing the five-fold increase in arrests of criminal noncitizens under the open-border policy of the Biden administration, compared with the prior administration).[18]

Longstanding doctrines of necessity and self-defense predate and survive the judicially created doctrines of preemption. For example, although private property rights were sacrosanct and virtually absolute under the common law, these rights always yielded to trespass-by-necessity whenever appropriate to preserve life.  *See, e.g.*, *Campbell v. Race*, 61 Mass. 408, 410, 411 (1851) (recognizing this "well settled" rule in the common law, or else "life itself would be endangered"). Yet the Biden administration stubbornly refuses to enforce federal law to the point of endangering Texans, and audaciously tries here to block the State of Texas from acting with necessity to protect

---

[17] https://shorturl.at/twNT9 (viewed Jan. 28, 2024).
[18] https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/criminal-noncitizen-statistics (viewed Jan. 26, 2024).

residents by SB 4. Plaintiffs' arguments against SB 4 are unpersuasive as an objection to the use of self-defense by Texas, after the Biden administration aggressively and persistently fails to do its own job to defend against pervasive illegality.

It cannot be credibly doubted that Biden's border policy of non-enforcement is a national security threat and a threat to Texas' sovereignty. Since January 2021, daily and monthly records of illegal entries across Texas' border have been reached, while crime has exponentially increased.[19] There is nothing "humanitarian" about allowing these unlawful entries and illegal invasions. All sorts of criminals (terrorists, human traffickers, drug cartels, rapists, and murderers) are attracted to breaking America's sovereignty to make money from vulnerable people knowing there will be no consequences due to this Administration's unlawful policy of non-enforcement and an open border. Americans, especially Texans, are being significantly harmed by the Administration's policies.

Already at the beginning of 2024, several Texas residents have been killed by illegal aliens. On January 11, 2024, a six-year-old girl was shot by criminal aliens. A 19-year-old criminal alien was subsequently arrested after telling police he hid the gun used in a 6-year-old's shooting death at an Old East Dallas home. A deputy stated that the little girl's sister had already been a homicide victim.[20]

On September 27, 2023, several human traffickers who were members of a deadly alien smuggling ring pleaded guilty to conspiring to smuggle illegal aliens, which resulted in multiple deaths, according to U.S. Attorney Alamdar S. Hamdani. The prosecuted aliens were Juan Manuel

---

[19] https://www.nytimes.com/2021/10/22/us/politics/border-crossings-immigration-record-high.html
[20] https://www.dallasnews.com/news/crime/2024/01/11/dallas-shooting-6-year-old-arrest/

Tena, 40, Pharr, Julia Isairis Torres, 37, Israel Torres Jr., 34, and Jose Refugio Torres, 27, all of Roma, Texas, who conspired to transport illegal aliens from the Rio Grande Valley to destinations within the United States. As a result of their criminal conspiracy, a total of eight aliens died, and two others were seriously injured. Their victims were from Honduras, Mexico, Guatemala, El Salvador, and Ecuador, as well as a 17-year-old boy from Ecuador and a pregnant woman from Honduras.[21] Another deadly incident caused by a Mexican National occurred on May 1, 2023, and the media reported that an illegal alien was convicted of killing five people. One man was shot to death 13 times outside a karaoke club, along with four (4) other people who were murdered. The convicted fugitive is a citizen of Mexico and had been deported at least five (5) times.[22]

Not enforcing immigration laws and having an open border are not humanitarian, especially when the United States already has immigration laws. With SB 4, the illegal entries will likely be reduced, including the threat to national and State sovereignty.

## CONCLUSION

Amicus AVIAC requests that the pending motions for injunctive relief be fully denied.

Dated:  February 8, 2024                                Respectfully submitted,

                                                        /s/ Paul W. Davis
                                                        Paul W. Davis
                                                        Paul M. Davis & Associates, P.C.
                                                        5720 Frisco Square Blvd., #2066
                                                        Frisco, TX 75034
                                                        (469) 850-2930
                                                        paul@fireduptxlawyer.com

---

[21] https://www.justice.gov/usao-sdtx/pr/members-deadly-alien-smuggling-ring-convicted (Sept. 27, 2023) and https://kfoxtv.com/news/local/san-elizario-man-sentenced-to-nearly-12-years-for-holding-smuggling-victims-hostage-luis-lorenzo-salas (Jan. 12, 2024) (both viewed  Feb. 3, 2024)

[22] https://www.ntd.com/suspect-in-killing-of-5-people-in-texas-was-illegal-immigrant-deported-multiple-times-sheriff_916586.html (May 1, 2023) (viewed Feb 3, 2024).

Andrew L. Schlafly
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
(908) 719-8608
(908) 934-9207 (fax)
aschlafly@aol.com

Lorraine G. Woodwark
Attorneys United for a Secure America
25 Massachusetts Avenue NW, Ste 335
Washington, D.C. 20001
(202) 591-0962
(202) 464-3590
LWoodwark@IRLI.org

Counsel for *Amicus Curiae*
Advocates for Victims of Illegal Alien Crime